IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| FREDERICK BROWN ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:07-CV-79 |
| ) | |
| BRUCE CHATMAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pro se Plaintiff Frederick Brown, an inmate in the custody of the Georgia Department of Corrections ('GDOC"), alleges that the Defendants violated both his Eighth Amendment right to be free of cruel and unusual punishment and the rights afforded him by the Americans with Disabilities Act ("ADA") by forcing him to endure environmental tobacco smoke ("ETS") at Dooly State Prison ("Dooly") where he was incarcerated from March 2002 until March 2005. Brown also claims that the Defendants transferred him to another prison in retaliation for filing grievances regarding the conditions of his confinement at Dooly.

This is not Brown's first, or last, ETS claim. In 2001, Brown filed an action alleging that Ware State Prison officials violated his constitutional right to be free of cruel and unusual punishment by exposing him to ETS and aggravating his various medical conditions, including asthma. *Brown v. Smith*, 5:01-cv-44 (S.D. Ga). The case proceeded to trial, ending with a jury verdict and judgment in favor of the Defendants. In 2004, before the action concerning Ware State Prison had even been resolved, Brown filed suit against a high-level official of the GDOC, alleging that the official was

deliberately indifferent to his serious medical needs in the handling of his grievances regarding his exposure to high ETS levels at Dooly. *Brown v. Head*, 190 Fed. Appx. 808 (11th Cir. 2006). Apparently, Brown's complaints in *Brown v. Head* involved many of the alleged exposures at issue here. However, rather than suing officials at Dooly, Brown sued the GDOC official allegedly responsible for reviewing his grievances. The district court entered summary judgment for the defendant, ruling that Brown failed to adduce any evidence of the official's personal involvement in the matter and respondeat superior liability was not appropriate under a Section 1983 claim. The Eleventh Circuit affirmed, but on different grounds. The Eleventh Circuit concluded that officials investigated Brown's complaint and responded accordingly, and that the lack of enforcement of Dooly's smoking policy was insufficient to establish deliberate indifference under the Eighth Amendment. Not surprisingly, the Defendants in this case contend that Brown's claim of deliberate indifference is barred by res judicata or, in the alternative, collateral estoppel. However, that issue is not addressed in this Order. In March 2009, Brown sued Washington State Prison officials, alleging, again, that officials were deliberately indifferent to his serious medical needs during his incarceration at Washington from June 2006 until May 2007. *Brown v. Roberts*, 5:09-cv-117 (M.D. Ga.). Brown, seemingly, files a new action each time he is transferred to a different prison, alleging similar, if not identical, claims of deliberate indifference against prison officials for exposing him to ETS.

The Court convened a pretrial conference on August 24, 2010. During this lengthy conference, the Court made several tentative rulings regarding Brown's Eighth Amendment and ADA claims, but allowed the parties fourteen days to submit further

argument or evidence before the Court issued final rulings. The Court now finalizes its rulings.

## I. Eighth Amendment Deliberate Indifference Claim

The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Supreme Court has held that a prison official's "deliberate indifference to [the] serious medical needs of [a] prisoner[ ] constitutes the unnecessary and wanton infliction of pain … proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation marks and citation omitted). As the Eleventh Circuit has explained,

> To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. First, a plaintiff must set forth evidence of an objectively serious medical need.[1] Second, a plaintiff must prove that the prison official acted with an attitude of deliberate indifference[2] to that need.

---

[1] A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

[2] To establish that a prison official acted with deliberate indifference to a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

In *Helling*, the Supreme Court held that a prisoner can state a cause of action under the Eighth Amendment for exposure to ETS by "alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35. As for the objective factor, the prisoner "must show that he himself is being exposed to unreasonably high levels of ETS." *Id.* Relevant facts will include whether the prisoner remains housed in the environment and whether the facility has enacted a formal smoking policy. *Id.* at 35-36. The objective factor further considers "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS … [and] also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* to such a risk." *Id.* at 36 (emphasis in original). As for the subjective factor, the prisoner must show that prison authorities demonstrated a "deliberate indifference" to his plight. *Id.* The adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." *Id.* The Eleventh Circuit's decision in *Brown v. Head* illustrates the difficulty of proving deliberate indifference when the prison has a no-smoking policy and attempts to enforce that policy.

It is significant that in *Helling* the Supreme Court largely dealt with the likelihood of future injury as the result of continued exposure to ETS and the defendants' contention that the Eighth Amendment "does not protect against prison conditions that

merely threaten to cause health problems in the future, no matter how grave and imminent the threat." *Id.* at 32-33. The Supreme Court rejected the suggestion that the Eighth Amendment did not protect inmates from future harm, reasoning that remedies for unsafe conditions need not await a tragic event. For example, the Court noted, the remedy of an injunction may be available to inmates even though exposure to an unsafe life-threatening condition has not, as yet, resulted in an injury. In short, the Supreme Court rejected the argument that only deliberate indifference to *current* serious health problems of inmates is actionable under the Eighth Amendment.

Given the facts of *Helling*, the parties and the Supreme Court's focus on the potential of future harm was understandable. Here, however, neither injunctive relief nor future harm as a result of the Defendants' conduct is in issue. Rather, Brown seeks damages from the individual Defendants for injury actually suffered while an inmate at Dooly from 2002 to 2005. Thus, the question is not whether Brown may suffer an injury in the future as a result of ongoing exposure to ETS. Instead, the question is whether he suffered an injury as a result of ETS exposure at Dooly. This necessarily impacts the Eighth Amendment inquiry. Objectively, Brown must prove that he was exposed to unreasonably high levels of ETS, and this objective inquiry requires consideration of whether Brown can prove, based on ETS exposure at Dooly, the requisite seriousness of the actual harm and the likelihood that he actually suffered injuries.

This leads to Brown's contention that all his miscellaneous ailments are related to exposure to ETS:

> ETS is the catalyst of Plaintiff's medical conditions. The
> same as one who is sicken from tomatoes, peanuts, dairy,

> etc. Plaintiff who has Asthma, COPD, Raynaud's Syndrome, cardiovascular disease, connective tissue disease and others is sicken from exposure to ETS which exacerbate the conditions causing pain, suffering and hospital treatment, debilitating health, kidney damage, lung damage, heart damage, and permanent damage to Plaintiff's hands and feet.

Plaintiff's Proposed Pretrial Order (Doc. 93).

While Brown's sweeping contention obviously raises proximate cause and damages issues, i.e., whether Brown can prove by a preponderance of the evidence that he suffered the injuries or damages that he claims, it also impacts Brown's burden of proving both the objective and subjective elements of an ETS claim. Objectively, he must establish the seriousness of the harm and that ETS exposure resulted in harm. Subjectively, he must establish the danger posed by exposure to ETS which the Defendants allegedly ignored. The question is, what is the objective harm and what serious medical condition or need did the Defendants ignore?

The short answer to Brown's contention that all his ailments are related to ETS exposure is that there is simply no evidence to support it. While it may be that Brown's conclusory lay testimony will be sufficient to create a jury issue as to whether his chronic asthma and alleged breathing difficulties were exacerbated by ETS exposure, he clearly cannot testify that "Raynaud's Syndrome, cardiovascular disease, connective tissue disease and other[ ]" medical conditions were caused by ETS exposure, and

there is no medical evidence supporting such a contention. Thus, the only relevant medical condition is asthma or, more generally, "breathing difficulties."

Accordingly, it will be Brown's burden, objectively, to establish that the alleged exacerbation of his asthma by unreasonably high levels of ETS is sufficiently grave to implicate the Eighth Amendment. Subjectively, Brown must prove that Defendants were deliberately indifferent to the alleged exacerbation of his asthma.

If Brown can prove that the Defendants were deliberately indifferent by exposing him to unreasonably high levels of ETS, he must then prove that his ETS exposure was the proximate cause of some injury suffered while at Dooly and the accompanying damages to which he is entitled. Under the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action maybe brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. Section 1997e(e); see *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002). The physical injury must be more than *de minimis* to avoid the application of § 1997e(e). *Id.*

Again, Brown's conclusory lay testimony that ETS is the catalyst of his various other medical ailments cannot be corroborated by medical evidence. Accordingly, the only relevant inquiry with regard to proximate cause and damages issues is whether Brown can prove by a preponderance of the evidence that the exacerbation of his asthma and any resulting damages were proximately caused by his exposure to ETS.

For the reasons stated above, it is **ORDERED** that Brown's Eighth Amendment claim is dismissed to the extent that he claims injury as a result of ETS other than

asthma or breathing-related conditions. At trial, Brown shall not contend that any other medical condition is the basis for his Eighth Amendment claim.

**II. ADA CLAIM**

In Brown's ADA claim, he alleges a "disability of inability to breathe and other medical conditions," and claims that the Defendants' failure to accommodate his disability violates his rights under the ADA. However, as discussed above, there is no evidence that any of Brown's myriad ailments, except possibly asthma and "breathing difficulties," bear any relationship to the claimed misconduct, or in the context of the ADA, the discriminatory conduct, i.e., the failure to provide a smoke-free environment. Thus, for purposes of the ADA claim, the relevant alleged disability is asthma.

The ADA's reach extends to disability discrimination against state prison inmates. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998). To establish a valid ADA claim, Brown must show that he is (1) a qualified individual with a disability; (2) that he was either excluded from or otherwise denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was a result of his disability. 42 U.S.C. § 12132. Thus, there must be a causal connection between the disability and the alleged discrimination.

Under the ADA, a disability is a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102. "Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195 (2002). A claimant must affirmatively show that his impairment "substantially limits" a major life activity. Major

-8-

life activities are those functions that the average person can perform with little or no difficulty, such as walking, hearing, speaking, breathing, and working. 29 C.F.R. §1630.2(i) (2006). An individual is not substantially limited in a major life activity if the limitation does not amount to a significant restriction in comparison with the abilities of an average person. See 194 A.L.R. Fed. 455 § 2. The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact, of or resulting from the impairment. *Id.*

Further, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999).[3] Although "a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, … if the impairment is corrected it does not 'substantially limit' a major life activity." *Id.* at 483.

By all accounts, Brown has received medical treatment for his asthma in the form of inhalers and various other medications, and, as a result of such mitigating measures,

---

[3] The ADA Amendments Act of 2008 ("ADAA") explicitly overruled *Sutton*, instructing courts that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals" and that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." Pub.L. 110-325. However, absent Congressional expression to the contrary, a presumption against retroactive application applies when new legislation would impair rights a party possessed when he acted or increase a party's liability for past conduct. *Fikes v. Wal-Mart, Inc.*, 322 Fed. Appx. 882, 883 (11th Cir. 2009). Because the conduct Brown complains of occurred during his incarceration at Dooly from 2002 to 2005, we look to the ADA as it was in effect at that time. Accordingly, whether Brown has a disability for purposes of the ADA will be determined with reference to medications and other mitigating measures.

his asthma is manageable. According to evidence in the record, Brown reported to Dooly's medical department for treatment related to ETS exposure less than ten times during his three plus years at the prison. Sachdeva Affidavit ¶¶ 19-20. Even on those occasions when Brown did complain of ETS, subsequent examinations revealed that he had a 99% oxygen level, well above average and not indicative of asthmatic distress. *Id.* at ¶ 21. On only one occasion was Brown sent to an outside hospital because of asthma-related complaints, and, importantly, Brown did not attribute this complaint to ETS exposure. *Id.* at ¶ 23. Brown was examined and found to have a 96% oxygen level and a normal pulse rate, both reliable indications of a lack of asthmatic distress. *Id.*

Given these facts, it appears doubtful that Brown's asthma amounts to a disability for purposes of the ADA. The infrequency of Brown's asthma attacks, the absence of reliable evidence illustrating the severity of his asthma, and the continued administration of medications suggest that Brown's asthma is manageable and cannot be characterized as substantially limiting the major life activity of breathing or working. Nevertheless, Brown has placed in the record, albeit barely, sufficient facts to create an issue of fact in this regard.

**SO ORDERED**, this the 10th day of September, 2010.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT